

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

MICHAEL J. BELLAMY,

        Petitioner,

v.                                  CRIMINAL ACTION NO. 2:03-cr-197

UNITED STATES OF AMERICA,

        Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Michael J. Bellamy's ("Petitioner") Motion for a Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 315.

**I. FACTUAL AND PROCEDURAL HISTORY**

On December 18, 2003, Petitioner and six of his co-defendants were named in a 61 count indictment accusing them of 29 robberies between December 2, 2002 and September 30, 2003. ECF No. 1; *see also* ECF No. 317 at ¶¶ 9–17 (summarizing Petitioner's offense conduct). Petitioner was charged with a total of 22 counts for his role in 10 of the robberies. ECF No. 1. On March 16, 2004, Petitioner pleaded guilty to Count 18, Interference with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951 ("Hobbs Act Robbery"); Count 19, Using, Carrying, and Possessing Firearms During and in Relation to, and in Furtherance of, a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); Count 24, Interference with Commerce by Threats or Violence, in violation of 18 U.S.C. § 1951; and Count 25, Using, Carrying, and Possessing Firearms During and in Relation to, and in Furtherance of, a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (c)(1)(C)(i). On June 8, 2004, this Court sentenced

Petitioner to a total term of 430 months, consisting of 46 months on Counts 18 and 24 to be served concurrently, 84 months on Count 19 to be served consecutively, and a term of 300 months on Count 25 to be served consecutively. ECF No. 101. To date, Petitioner has been incarcerated for over 16 years and is scheduled to be released on August 21, 2034.

On May 20, 2020 Petitioner filed his *pro se* Motion for Sentence Reduction. ECF No. 315. On May 21, 2020 the Court ordered the appropriate responses to Petitioner's Motion. ECF No. 316. Petitioner, through counsel, responded to the Court's Order on June 5, 2020. ECF No. 327. The Government responded in opposition on June 22, 2020. ECF No. 329. Petitioner replied on June 29, 2020 ECF No. 331. The Government has also filed a Motion to Hold Petitioner's Motion Abeyance, pending a ruling from the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") on the Court's Order in *United States v. McCoy*. 2020 WL 2728225 (E.D. Va. May 26, 2020) (granting compassionate release to one of Petitioner's codefendants). ECF No. 333. This matter is ripe for disposition.

## II. LEGAL STANDARD

Relevant to the issue of sentence reductions, the text of 18 U.S.C. § 3582(c)(1)(A) provides the following:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
> (i) extraordinary and compelling reasons warrant such a reduction; or
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is

2

currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, the text of § 3582(c)(1)(A) allows a district court to reduce a sentence upon a petitioner's motion with the following findings: (1) a reduction is supported by the application of the § 3553(a) factors; (2) the petitioner has achieved compliance with the 30 day exhaustion requirement, absent circumstances justifying its waiver;[1] (3) the petitioner has made a demonstration satisfying the requirements of either subsection (c)(1)(A)(i) or (c)(1)(A)(ii); and (4) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

### III. DISCUSSION

**A. Consideration of the § 3553(a) Factors**

In considering a term of imprisonment, courts must comply with 18 U.S.C. § 3553(a), which enumerates several factors designed to create a sentence that is "sufficient but not greater than necessary." The Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act ("FIRST STEP Act") discontinued the former practice of "stacking" multiple convictions under 21 U.S.C. § 924(c)(1)(A) for firearms violations during a crime of violence

---

[1] Petitioner submitted his request for compassionate release to the Bureau of Prisons on April 6, 2020. ECF No. 327 at 3. The Bureau of Prisons summarily rejected his request without consideration. *Id.* Accordingly, the exhaustion requirement is satisfied. The Government contends that Petitioner has not satisfied the exhaustion requirement. In support, they offer the Bureau of Prisons rejection of Petitioner's administrative request for compassionate release. ECF No. 329-1. The administrative rejection fails to consider the existence of any extraordinary and compelling reason beyond a narrow and outdated interpretation of § 3582(c)(1)(A). *See generally United States v. Maumau*, 2020 WL 806121 (D. Utah Feb. 18, 2020) (discussing the Bureau of Prisons' institutionalized refusal to consider any nonmedical justification for compassionate release). Based on the Bureau of Prisons' narrow interpretation of compassionate release, the Court finds that subjecting Petitioner to the administrative appeals process would be futile. *See Poulios v. United States*, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (holding that the exhaustion requirement may be waived with a finding of futility).

3

before a prior conviction under the same subsection became final. *See* 21 U.S.C. § 924(c)(1)(C) (requiring a prior conviction under § 924(c)(1)(A) to be final before a defendant may be sentenced to a mandatory minimum of 25 years for a subsequent violation). Accordingly, there exists an inherent disparity between individuals sentenced pursuant to § 924(c)(1)(C) for multiple firearm offenses occurring within the same indictment prior to the passage of the FIRST STEP Act and individuals sentenced for multiple violations of § 924(c)(1)(A) in the same indictment after the enactment of the new law.

In this case, Petitioner pleaded guilty to two violations of § 924(c)(1)(A) for twice brandishing a firearm during the commission of two crimes of violence within the same indictment. Petitioner's Criminal History Category was III and his Total Offense Level was just 21, but his stacked gun convictions yielded a total mandatory term of 384 months for Counts 19 and 25. ECF No. 317 at 36. In total, Petitioner faced a mandatory minimum of 430 months at his original sentencing based on the application of the statutory mandatory minimum on Counts 19 and 25 and the mandatory sentencing guidelines on Counts 18 and 24. *Id.* If he were sentenced today, Petitioner would be subjected to a mandatory minimum of 168 months on Counts 19 and 25, with a total *advisory* guidelines range of 214–225 months. *See United States v. Booker*, 543 U.S. 220 (2005) (holding the Sentencing Guidelines advisory, rather than mandatory).

A reduction of Petitioner's sentences on Counts 19 and 25, to terms of 84 months each, consecutive, is consistent with the § 3553(a) factors, especially § 3553(a)(2)(A) ("the need for the sentence imposed...to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and § 3553(a)(6) ("the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"); *see also United States v. Urkevich*, 2019 WL 6037391, at *2 (D.

4

Neb. Nov. 14, 2019) (reducing three "stacked" firearm counts from 660 months to 180 months because the petitioner's former sentence was 40 years longer than the sentence he would have likely received under current law). Petitioner's codefendant was also granted compassionate release after pleading guilty to similar charges 16 years ago. *McCoy*, 2020 WL 2728225, at *6.

In addition to the legal disparity between individuals sentenced before and after the elimination of the "stacking" provision and between Petitioner and his codefendant, Petitioner has displayed a solid record of rehabilitation during his stint in federal prison. His security classification has steadily decreased since he was sentenced 16 years ago and he has obtained employable skills, participated in rehabilitative programming, and made payments toward his share of the restitution order. ECF No. 327 at 12–13. In a previous grant of compassionate release, Petitioner's codefendant was credited for similar positive indicators of his rehabilitation. *McCoy*, 2020 WL 2728225, at *3. Further, Petitioner's clear acceptance of responsibility, independent of the actions of his co-defendants and gives the Court optimism that he will fulfill the balance of the restitution order even more efficiently upon release.

An examination of Petitioner's presentence report reveals that his teenage years were troubled, marked by his dropping out of high school, abuse of drugs, and struggles to sustain gainful employment. ECF No. 317 at ¶¶ 78–86. Petitioner is clearly a different person at 37 years old than he was at his involvement in these crimes at age 21. *See generally Miller v. Alabama*, 567 U.S. 460, 472 n. 5 (2012) (discussing "an ever-growing body of research in developmental psychology and neuroscience" supporting the United States Supreme Court's juvenile sentencing jurisprudence). Petitioner was not a juvenile at the time of his offenses and principles of juvenile law certainly do not apply to his unjustifiable actions and the resulting sentence. However, he has demonstrated a reformed decision-making process during his term of incarceration, as

evidenced by his steady payments toward fulfillment of restitution and sustained record of employment in prison. *Id.* at 472 (discussing "the prospect that as the years go by and neurological development occurs, his deficiencies will be reformed") (internal citations omitted). In sum, the structural disparity between § 924(c) defendants sentenced to stacked terms, as well as an individualized application of the § 3553(a) factors support a sentence reduction.

The Government contends that Petitioner's crimes, in combination with two violations of institutional rules during his term of his incarceration, are severe enough to preserve Petitioner's sentence under the § 3553(a) factors after the FIRST STEP Act's elimination of "stacking." ECF No. 329 at 27–28. Contrary to the Government's assertions, Petitioner's two nonviolent institutional violations are not enough to preclude his request for compassionate release. *See Jones v. United States*, 431 F. Supp. 3d 740, 753 (E.D. Va. Jan. 6, 2020) (granting a sentence reduction under § 3582(c)(1)(B) to a petitioner who had a few relatively minor institutional violations and was not a management problem). In the context of this motion for compassionate release, the institutional violations at issue do not justify the sentencing disparity between two stacked § 924(c) convictions and two unstacked convictions under the current version of that statutory scheme. While these institutional violations are not to be condoned, they would ordinarily result in the loss of good time credit on the administrative level, not the mandated affirmance of Petitioner's original prison sentence when there are otherwise grounds for compassionate release.

**B. The Scope of the Court's Statutory Authority Pursuant to § 3582(c)(1)(A)**

Notwithstanding the foregoing consideration of the 3553(a) factors, Congress declined to retroactively apply the elimination of the "stacking provision" to individuals convicted prior to December 21, 2018. FIRST STEP Act, § 403, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

6

Accordingly, the Court has no authority to retroactively apply § 403 of the FIRST STEP Act to automatically reduce Petitioner's sentence solely based on the elimination of the stacking provision. *Urkevich*, 2019 WL 6037391, at *1. However, Petitioner may still demonstrate "extraordinary and compelling reasons" supporting a reduction, pursuant to § 3582(c)(1)(A) despite the fact that he cannot automatically qualify for retroactive relief under the FIRST STEP Act.

The parties dispute whether the grant of a sentence reduction in favor of Petitioner is supported by the text of § 3582(c)(1)(A). Specifically, the parties disagree on the following issues: (1) whether the statutory authority to grant a sentence reduction is precluded by U.S.S.G. § 1B1.13 as the relevant Sentencing Commission policy statement in the instant case; and (2) whether Petitioner has demonstrated "extraordinary and compelling reasons" warranting a reduction under the statutory standard and the standards articulated in U.S.S.G § 1B1.13, to the extent U.S.S.G. § 1B1.13 is applicable. Accordingly, this Order clarifies the appropriate legal standard for compassionate release under § 3582(c)(1)(A) and applies that standard to the Petitioner's Motions.

Section 3582(c)(1)(A)(i) allows for sentence reductions upon consideration of "a combination of factors, including but not limited to those listed in [U.S.S.G § 1B1.13 n. 1 (A)–(C)], in evaluating a petitioner's request for a sentence modification." *Poulios v. United States*, 2020 WL 1922775, at *2 (E.D. Va. Apr. 21, 2020). U.S.S.G § 1B1.13 is merely advisory to a district court's definition of "extraordinary and compelling reasons." *See United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("the Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v.*

*Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive").

Prior to the amendment of § 3582(c)(1)(A) with the FIRST STEP Act, a petitioner seeking compassionate release was precluded from filing a motion seeking relief without approval from the Bureau of Prisons. *See United States v. Beck*, 425 F. Supp. 3d 573, 577–78 (M.D.N.C. 2019) ("[b]efore passage of the First Step Act of 2018, district courts could grant compassionate release sentence reductions only upon a motion by the BoP director"). In contrast, the current law allows an individual in federal prison to directly petition the district court for relief. *See* § 3582(c)(1)(A). The purpose of this change is "Increasing the Use and Transparency of Compassionate Release" by removing the nearly impenetrable barrier formerly presented by the Bureau of Prisons. FIRST STEP Act, § 603(b), 132 Stat. at 5239; *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa Oct. 8, 2019); *see also United States v. Rodriguez*, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) ("BOP's 'compassionate release program had been poorly managed and implemented inconsistently, ... resulting in eligible inmates ... not being considered for release, and terminally ill inmates dying before their requests were decided.'").

However, in defining "other reasons" that may satisfy the requirements of § 3582(c)(1)(A)(i) pursuant to its statutory authority under the same section, the Sentencing Commission's current policy statement assumes that the Bureau of Prisons still has veto power over such miscellaneous requests for a sentence reduction *before* they reach the district court. *See* U.S.S.G. § 1B1.13 n. 1 (D). Approval of the Bureau of Prisons as a prerequisite to the district court's review of sentence reduction petitions plainly violates the intent of Congress in passing the FIRST STEP Act and the textual commands of § 3582(c)(1)(A). *See* § 3582(c)(1)(A)

(allowing a defendant to bring a motion to reduce his or her sentence without the approval of the Bureau of Prisons). Accordingly, the Court has the statutory authority to define the contours of the "extraordinary and compelling reasons" for a sentence reduction and is not constrained by the Bureau of Prisons' interpretation of § 3582(c)(1)(A) via U.S.S.G. § 1B1.13.

The Government's arguments on the contours of § 3582(c)(1)(A)(i) can be summarized into the following major points: (1) "only the Bureau of Prisons has the authority to determine whether any other reason is 'extraordinary and compelling'" under a rigid application of U.S.S.G. § 1B1.13 n. (D); (2) only the Sentencing Commission can assess the adequacy of its own policy statements; and (3) the logical reasoning within *Dillon v. United States*, 560 U.S. 817 (2010) requires that any reduction under § 3582(c)(1)(A) be consistent with Sentencing Commission policy statements. Once again, this position overlooks the explicit removal of the discretionary veto power over sentence reduction requests formerly vested with the Bureau of Prisons within § 3582(c)(1)(A). Additionally, final authority over a request for a sentence reduction has always been within the purview of the district court, not the Bureau of Prisons. *United States v. Maumau*, 2020 WL 806121, at *3 n. 5 (D. Utah Feb. 18, 2020) ("[t]he courts have never been a rubber stamp for compassionate release decisions made by the Bureau of Prisons...[§ 3582(c)(1)(A) as amended by the FIRST STEP Act] is not a new grant of discretion; it is merely an increased opportunity to exercise that discretion"). In sum, in amending § 3582(c)(1)(A), Congress intended to remove the Bureau of Prisons from its former role as a gatekeeper over compassionate release petitions, *not* entrench the delegation of compassionate release decisions to the Bureau of Prisons through the Sentencing Commission. Accordingly, the Court understands its discretion to be defined by the text § 3582(c)(1)(A) as amended by the FIRST STEP Act, rather than the Bureau of Prisons' past practices or a policy statement from the

Sentencing Commission that is in inherent conflict with the relevant statutory text.

A district court's discretion is still limited by the following statutory commands: (1) the relevant factors set forth in 18 U.S.C. § 3553(a); (2) a finding of "extraordinary and compelling reasons," the extremely high standard set forth in § 3582(c)(1)(A)(i); and (3) "[t]he rehabilitation of the petitioner alone shall not be considered an extraordinary and compelling reason," another congressional directive within 28 U.S.C. § 994(t). Additionally, courts are still not permitted to modify "stacked" gun sentences simply because of the FIRST STEP Act's prospective modification of § 924(c)(1)(C).

Moreover, the Sentencing Commission maintains the statutory authority to update its guidance for district courts in defining "extraordinary and compelling reasons" after the passage of the FIRST STEP Act. *See* § 3582(c)(1)(A) ("and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission"). Further, the Court still considers U.S.S.G. § 1B1.13 in informing its discretion under § 3582(c)(1)(A)(i). *See supra* at 7 (describing U.S.S.G. § 1B1.13 as providing "helpful guidance on the factors supporting compassionate release"); *see e.g. Dinning v. United States*, 2020 WL 1889361, at *3 (E.D. Va. Apr. 16, 2020) ("[w]hile the provisions of U.S.S.G. § 1B1.13(2) are not binding on the Court, its advisement that relief should be prohibited to a petitioner who poses an ongoing danger to the community is controlling in the Court's resolution of the instant matter."). Based on the foregoing, the Court finds that U.S.S.G. § 1B1.13 is helpful in advising its discretion pursuant to § 3582(c)(1)(A), while the compassionate release policies of the Bureau of Prisons are not.

### D. Application of § 3582(c)(1)(A)(i)

After reviewing the relevant filings, the Court finds that Petitioner has demonstrated extraordinary and compelling reasons that merit a sentence reduction on Counts 19 and 25. A

10

petitioner seeking compassionate release may offer a combination of factors to establish extraordinary and compelling reasons for a sentence reduction, including relative youth at the time of the sentence, "the incredible length of the mandatory sentence imposed," and the disparity between individuals sentenced before and after the passage of the FIRST STEP Act, in combination with one another and other factors. *Maumau*, 2020 WL 806121, at *7.

The sentence imposed on Petitioner for his stacked § 924(c) convictions was lawful and mandatory when they were imposed, though the totality of the penalty was "far greater than was necessary to achieve the ends of justice." *McCoy*, 2020 WL 2728225, at *5; *Brown*, 411 F. Supp. 3d at 453; *see also Deal v. United States*, 508 U.S. 129 (1993) (affirming the former practice of "stacking" multiple § 924(c) convictions within the same indictment to impose the recidivist enhancement within § 924(c)(1)(C)(i)). Additionally, Petitioner was a young man with a nonviolent criminal history at the time of his offenses, making the application of such harsh penalties designed for violent, recidivist offenders even more inappropriate. ECF No. 317 at ¶¶ 53–60 (listing a series of driving offenses and two marijuana possession offenses as the only relevant criminal history). Further, the Court rejects the argument that all of the counts charged against Petitioner should be considered against the applicable mandatory minimums in evaluating requests for compassionate release. These hypothetical punishments highlight the unreasonableness of indiscriminately applying mandatory minimum sentences as a general matter and emphasize the wisdom of the *Maumau* court's inclusion of "the incredible length of the sentence imposed" as a consideration in evaluating whether a petitioner has presented extraordinary and compelling reasons for a sentence reduction. *Maumau*, 2020 WL 806121, at *7. In this case, the Court must consider the application of mandatory minimums that are actually relevant, as well as the discretion afforded by § 3582(c)(1)(A), which includes scrutiny

of the overall sentence length demanded by those mandatory minimums.

Today, Petitioner would likely be subjected to less than half of the mandatory term that was imposed in his original sentence. A disparity of over 200 months between Petitioner's stacked sentence and a similarly situated defendant whose mandatory minimum sentences are not stacked creates a disparity concerning the § 3553(a) factors, which require just punishment for the relevant offenses. *See* § 3553(a)(2)(A). Accordingly, the Court must consider this factor in examining whether Petitioner's request for relief, though it is not dispositive.

Finally, Petitioner's rehabilitative efforts assist in forming an extraordinary and compelling basis for relief. *See supra* III.A (listing Petitioner's vocational advancement, along with his steady restitution payments). The Court is further persuaded that Petitioner is no longer a danger to the community, as advised by U.S.S.G. § 1B1.13(2). *See* § 3553(a)(2)(C) (listing "to protect the public from further crimes of the defendant" as a sentencing factor). Upon release, Petitioner has strong incentives to continue working toward full payment of restitution and the job skills to accomplish this objective. Moreover, Petitioner has a workable release plan, a job upon release, and family support. ECF No. 327 at 13. The Court will also have the ability to monitor any ingestion of drugs by Petitioner while he is on supervised release, as ordered in his original criminal judgment.

Petitioner was sentenced at just 21 years old to a mandatory 430 month term for crimes for which he would face an advisory guidelines range of 214–225 months if sentenced today. While none of the foregoing factors can independently support a sentence reduction, in combination, Petitioner has established extraordinary and compelling reasons for a sentence reduction in the aggregate. Specifically, Petitioner's relative youth at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for

similar crimes after the FIRST STEP Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief. Accordingly, the Court will reduce Petitioner's sentence on Counts 19 and 25 to consecutive terms of 84 months, to be served consecutively to his concurrent sentences of 46 months on Counts 18 and 24. Therefore, Petitioner's total sentence is reduced to a cumulative term of 214 months.

### E. The Government's Motion to Hold Petitioner's Motion in Abeyance

The Government's opposition to Petitioner's requested relief, as well as its disagreement with the reasoning supporting the Court's grant of compassionate release to his codefendant, is noted in its request for abeyance and its appeal of that case to the Fourth Circuit. ECF No. 333. However, having found extraordinary and compelling reasons for a sentence reduction, the Court finds no basis for the Government's request to delay relief under § 3582(c)(1)(A)(i).

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion is **GRANTED**. ECF No. 315. The Government's Motion to Hold Petitioner's Motion in Abeyance is **DENIED**. ECF No. 333. The Court hereby sentences Petitioner to a term of **TIME SERVED**. Petitioner shall serve a term of supervised release as ordered in his criminal judgment. The Bureau of Prisons shall release Petitioner within 10 days of the date of this Order.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED**.

Norfolk, Virginia
July ___, 2020

/s/
Raymond A. Jackson
United States District Judge